UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NOEL GREEN and RYAN WEATHERBY,<br>        Plaintiffs<br><br>        v.<br><br>DATANYZE, LLC,<br>        Defendant | No. 23 CV 1605<br><br>Judge Jeremy C. Daniel |

**ORDER**

Defendant Datanyze, LLC's motion to dismiss, (R. 15), is denied. The Defendant will have 21 days to answer the complaint. Status hearing set for February 14, 2024, at 9:30 a.m.

**STATEMENT**

According to the complaint, defendant Datanyze, LLC ("Datanyze") operates an online platform that allows sales and marketing professionals to search and view information about other members of their industry, including their contact information and work history. (R. 1-1 at 6–18 ("Compl.") ¶ 3). The platform operates by using a "credit" system. (*Id.* ¶ 22). Each month, subscribers receive credits that they can use to access profiles via Datanyze's website and a browser extension. (*Id.*) One credit allows a user to view one profile. (*Id.*) A paid subscription costs either $29 or $55 per month for either 80 or 160 credits, respectively. (*Id.* ¶ 23.) Datanyze also offers a free trial period to prospective users. (*Id.* ¶ 21–22.) During the first 90 days after creating an account, prospective customers receive 10 credits to view any profiles on the platform. (*Id.* ¶ 22.) After the trial period ends, or all of the credits have been used, users must enter payment information to view additional profiles. (*Id.*)

Plaintiffs Noel Green and Ryan Weatherby are individuals whose personal information appeared on Datanyze's platform. *See generally id.* The Plaintiffs filed this suit in state court under the Illinois Right of Publicity Act (the "IRPA"), 765 ILCS § 1075/1 *et seq.*, alleging that Datanyze used their identity for commercial purposes without their consent. Datanyze removed the case to federal court and then moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Plaintiffs have failed to state a claim on which relief may be granted. (R. 1; R.15.)

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). Plaintiffs need not provide detailed factual allegations to survive a motion to dismiss, but they must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Huston v. Hearst Commc'ns, Inc.*, 53 F.4th 1097, 1099 (7th Cir. 2022).

The IRPA prohibits the "use [of] an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 ILCS 1075/30. To state a claim under this provision, the Plaintiffs must plead (1) the appropriation of their identity, (2) without consent, (3) for Datanyze's commercial benefit. *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1008 (7th Cir. 2019).

Datanyze does not dispute that the Plaintiffs have alleged the first two elements of an IRPA claim. Instead, it argues that it did not use the Plaintiffs' identities for a commercial purpose. *See generally* R. 16. The IRPA defines "commercial purpose" as:

> the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising.

765 ILCS 1075/5. In other words, the IRPA "contemplates a use or holding out of an individual's identity with the aim of effectuating a sale." *Huston*, 53 F.4th at 1101.

To establish the commercial purpose element, Plaintiffs allege that Datanyze allowed users to access their profiles during the initial trial period in order to "promote" "advertise," or "offer for sale" its paid subscription product. At the pleading stage, it is plausible that granting users access to Plaintiffs' identity as part of a free trial constitutes a promotion or enticement to purchase a paid subscription. *See Hoffower v. Seamless Contacts, Inc.*, 2022 WL 17128949, at *2 (N.D. Ill. Nov. 22, 2022) (allegations that "prospective subscribers were able to see [the plaintiff's] information—or that of others—before purchasing a subscription, and that [the] information was displayed as part of a come-on to get them to buy in" were sufficient to state a claim under the IRPA); *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020). It is reasonable to infer that Datanyze offered the free trial as an inducement for users to become paying customers.

2

Datanyze raises several arguments in response. First, it argues that applying the IRPA in this context would contradict the statute's legislative history, which limits its scope to endorsements. (R. 16 at 5–6.) But when considering questions of statutory interpretation, the Court must begin with the plain language. *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). On its face, the IRPA is not limited to endorsements. *See, e.g.*, *Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ("IRPA does not require that the commercial purpose be an apparent endorsement of the defendant's product or service."); *accord Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 594 (N.D. Ill. 2021). And a defendant's use of a plaintiff's identity in connection with a free subscription to induce users to purchase a paid subscription plausibly constitutes "advertising," "promotion," or "offering for sale" under the statute. Because the plain language of the IRPA does not restrict its application to false endorsements, Datazyne's reliance on the statute's legislative history is unpersuasive. *Directv, Inc. v. Barczewski*, 604 F.3d 1004, 1008 (7th Cir. 2010).

Datanyze also argues that the Plaintiffs are required, and have failed, to allege that the free trial and paid subscription are separate products. R. 16 at 7–12. Because the free trial grants access to the same content as a paid subscription, Datanyze argues that the two products are indistinguishable, and that one cannot constitute the advertisement or promotion of the other. Here, Datanyze is on slightly better footing. Trial courts in this Circuit have reached "conflicting outcomes" as to whether plaintiff must allege separate products to state a claim under the IRPA. *Huston*, 53 F.4th at 1101. One line of cases has upheld a separate product requirement, reasoning that a company does not violate the IRPA by offering previews of the same product that it sells. *Dobrowolski v. Intelius, Inc.*, 2018 WL 11185289 (N.D. Ill. May 21, 2018); *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013). A more recent line of cases has declined to apply a "separate product" requirement and held that the use of a plaintiff's identity in connection with a free preview to advertise or promote a monthly subscription service is a "textbook example" of an IRPA violation. *See Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746, 760 (N.D. Ill. 2020); *accord Mackey v. PeopleConnect, Inc.*, 2023 WL 2561621, at *10 (N.D. Ill. Mar. 17, 2023), *appeal filed*, No. 23-1617 (7th Cir. Mar. 30, 2023); *Hoffower*, 2022 WL 17128949, at *2; *Siegel v. Zoominfo Tech., LLC*, 2021 WL 4306148, at *3 (Sept. 22, 2021); *Gaul v. Truth Now, LLC*, 2022 WL 3647257, at *7 (C.D. Ill. Aug. 24, 2022); *Gaul v. CheckPeople, LLC*, 2022 WL 3212067, at *3-4 (C.D. Ill. Aug. 9, 2022); *Bonilla*, 574 F. Supp. 3d at 595; *Krause v. RocketReach, LLC*, 561 F. Supp. 3d 778, 782-83 (N.D. Ill. 2021).

Acknowledging the apparent split in district court decisions, the Court sides with the majority and finds that the Plaintiffs are not required to allege "separate products" at the pleading stage. The plain text of the IRPA does not support imposing such a requirement. *See Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 831, 838 (N.D. Ill. 2020) (quoting *DeSmet ex rel. Estate of Hays v. Cnty. of Rock Island*, 848 N.E.2d 1030, 1039

3

(Ill. 2006)) ("Where an enactment is clear and unambiguous," a court is "not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations[,] or conditions that the legislature did not express.").

Even if the IRPA can be read to impose a separate product requirement, the Plaintiffs' have plausibly alleged that the free trial and paid subscription are separate products. The free trial offers users limited access to the Datanyze platform by granting prospective users only 10 credits for the initial period. In other words, it allows users to access only a fraction of the content that they would be able to access with a paid subscription. The use of a subscription model—and the difference in the amount of content that may be accessed during the free trial as opposed to the paid subscription—distinguishes this case from *Dobrowolski* and *Thompson*. In those cases, the plaintiffs alleged that their identities were being sold as standalone products rather than as part of a subscription that included a range of other content. 2018 WL 11185289, at *3; 2013 WL 3321612, at *2. Without viewing images of the plaintiffs' identifying information prior to buying, customers could not verify the product they were purchasing. *See Dobrowolski*, 2018 WL 11185289 (holding that the use of plaintiff's name on a marketing page to identify a report about an individual did not constitute commercial use); *Thompson*, 2013 WL 3321612 ("The Court is unpersuaded that showing a buyer a photograph of a person that she is considering whether to buy qualifies as a 'commercial purpose' as the IPRA uses that term."). Here, however, the Plaintiffs allege that their individual profiles cannot be purchased as standalone products on the Datanyze platform. (Compl. ¶ 22.) It is not necessary for a subscriber to view the information contained on the Plaintiffs' individual profiles to identify what they are purchasing when they subscribe to the platform. The Plaintiffs' profiles are *part* of—and not coextensive with—the content that can be accessed with a Datanyze subscription.

Datanyze also argues that, because the Plaintiffs do not dispute that Datanyze is allowed to *sell* their information, accepting the Plaintiffs' allegations leads to the nonsensical conclusion that Datanyze cannot give away for free what it is allowed to sell. R. 16 at 2. At this stage, Datanyze's attempt to characterize its free trial offer as a handout rather than a promotion is unavailing. Presumably the company expects to reap some benefit from offering free trials to prospective users. And the Court must draw all factual inferences in the Plaintiffs' favor. *Huston*, 53 F.4th at 1099.

Datanyze also directs the Court to a recent federal district court decision that dismissed Ohio right of publicity claims based on the same conduct. (R. 27 (citing *Hudson v. Datanyze, LLC*, No. 23 C 466 (N.D. Ohio Nov. 17, 2023).) *Hudson* is not binding on this Court, however, and, despite its factual similarities, the Court is not persuaded the that its reasoning supports dismissal. In *Hudson*, the plaintiffs brought claims under the Ohio Right of Publicity Statute ("ORPS"), Ohio Rev. Code § 2741.01, *et seq*. Unlike the IRPA, the ORPS expressly limits right of publicity claims to aspects of an individual's identity that "have commercial value." *Compare* 765

4

ILCS 1075/5, *with* Ohio Rev. Code § 2741.01. To state a claim under the ORPS, a plaintiff must plausibly allege that the defendant's use of their identity was not incidental; in other words, that "their name or likeness has value." *See Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017); *see also id.* (citing *Vinci v. Am. Can Co.*, 69 Ohio App. 3d 727, 729 (1990)). It was the plaintiffs' failure to allege non-incidental use that doomed their ORPS claims in *Hudson. See* No. 23 C 466, ECF No. 17 at 8–9. This reasoning is not applicable here, however. As the Plaintiffs point out, the IRPA does not contain an incidental-use exception, nor has the Illinois Supreme Court adopted one. (*See* R. 23-1 (citing *Mackey*, 2023 WL 2561621, at *10).) While the district court's decision in *Hudson* may have been correct as a matter of Ohio law, it has no bearing on the Illinois claims at issue in this case.

Finally, Datanyze argues that application of IRPA in this context would violate the First Amendment. However, determining whether the IRPA infringes on protected speech is a fact-intensive inquiry that "more appropriately represents an affirmative defense." *Siegel, LLC*, 2021 WL 4306148, at *4; *accord Dobrowolski*, 2017 WL 3720170, at *9; *Daniels v. FanDuel, Inc.*, 2017 WL 4340329, at *11 (S.D. Ind. 2017). "[A] plaintiff's complaint need not anticipate or refute potential affirmative defenses," and "[r]arely will the face of the complaint so clearly prove the opponent's affirmative defense that immediate dismissal, prior to the filing of an answer, will be proper." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). Because Datanyze's First Amendment argument raises issues of fact and the Plaintiffs have not pleaded themselves out of court, the Court declines to consider Datanyze's First Amendment defense at this juncture.

Accordingly, because the Plaintiffs have plausibly alleged that Datanyze used their identity to promote its paid subscription product without their consent, Datanyze's motion to dismiss the Plaintiffs' IRPA claim is denied.

Date: 1/16/2024

JEREMY C. DANIEL
United States District Judge